## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| The Covenant at South Hills, Inc. | Bankruptcy No. 09-20121 |
| Debtor(s) | Chapter 11 |
| | |
| Madison Investment Trust | |
| Plaintiff(s) | |
| | |
| v. | Adversary No. 09-2209 |
| | **Related to Doc. No. 1, Complaint filed on** |
| | **behalf of Madison Investment Trust to** |
| The Covenant at South Hills, Inc. | **Determine Validity, Priority and Extent of** |
| Defendant(s) | **Liens; Motion to Intervene filed by certain** |
| | **residents of Debtor** |

### MEMORANDUM OPINION[1]

The matter before the court arose during a pretrial conference on June 19, 2009, with respect to a motion to intervene filed on behalf of four residents of Debtor's continuing care facility.[2] Madison Investment Trust asserts a perfected first priority lien which it contends is independent of the first perfected lien held by the Indenture Trustee, U.S. Bank National Association. The parties agreed at the June 19, 2009, hearing that it was not necessary to decide the issue of the priority of the lien asserted by Madison, only whether a separate lien exists in Madison's favor. Because we determine that Madison does not have the security interest that it asserts, the priority issue is resolved as a result.

---

[1]The court's jurisdiction is not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

[2]It is also related to a motion for relief from stay filed by Madison Investment Trust, Bankr. Doc. No. 235. That motion was partially resolved at a hearing on July 28, 2009. *See id.*, Doc. No. 407, Order of July 31, 2009.

Debtor operates a continuing care retirement community, the construction of which was funded primarily through the issuance of tax exempt bonds that were partially secured by letters of credit.  Debtors defaulted soon after obtaining the financing and the parties have been trying to resolve the debt through a sale process.  Debtor filed chapter 11 on January 8, 2009, which stayed actions in foreclosure and to appoint a receiver that were pending in state court.

It is undisputed that the liens held by the Indenture Trustee per the Note,  Loan Agreement, Mortgage and Security Agreement, and the Trust Indenture are for the benefit of the Bondholders as well as Madison and that the Indenture Trustee holds valid perfected first priority liens.  There likewise is no dispute that Madison has a claim.  The dispute is whether it has an independent perfected security interest in and lien on the part of the prepetition collateral that is subject to the Indenture Trustee's lien.

The parties agree that the documents[3] control.  Madison asserts that it obtained a first lien priority through a Reimbursement Agreement, an Assignment of Reimbursement Agreement, a Participation Agreement and an Intercreditor Agreement, as follows:

> . . . Credit Bank [KeyBank National Association - now Madison] and the Debtor entered into a Reimbursement Agreement (the "Reimbursement Agreement"), pursuant to which the Credit Bank agreed to issue the Letters of Credit. The Reimbursement Agreement requires the Debtor to reimburse the Credit Bank, with interest, for all draws honored under the Letters of Credit.... As described above, all rights of Credit Bank under the Reimbursement Agreement were ultimately assigned to Madison,  Plaintiff, pursuant to the terms of (and in conjunction with other documents, as more fully

---

[3]All exhibits referred to herein are attached to the adversary complaint unless otherwise noted.

> described below) the Assignment of Reimbursement Agreement
> (the "Assignment of Reimbursement Agreement")....
>
> Prior to the Assignment of Reimbursement Agreement,
> Credit Bank and Madison had entered into a Participation
> Agreement dated September 15, 2006 (later amended on
> October 19, 2007) pursuant to which Madison had purchased
> certain rights under the Reimbursement Agreement on the terms
> and conditions set forth therein....
>
> Based upon the Participation Agreement, as amended,
> and the Assignment of Reimbursement Agreement, Madison
> has succeeded to all of the rights and benefits of the Credit
> Bank relating to the Reimbursement Agreement as well as to
> that certain Intercreditor Agreement dated as of February 1,
> 2001, by and between the Original Indenture Trustee and Credit
> Bank, as acknowledged by the Debtor.

Memorandum of Law in Support of Madison Investment Trust's Independent, Perfected

Security Interest and Lien, Adv. Doc. No. 40 at 7.  We find that  none of the aforesaid

documents grants the asserted security interest to Madison.  The history of events is as

follows.

*History and Documents*

U.S. Bank National Association is the Indenture Trustee, successor to National City

Bank of Pennsylvania, the Original Trustee.  U.S. Bank also has succeeded to the interests of

the Issuer, as described below.[4]  Madison Investment Trust is successor in interest to

--------

[4]*See* Trust Indenture, Exhibit A, at 1, where the assignment is documented.  *See also*
Loan Agreement, Exhibit B, at 1, where the fourth "Whereas" clause states,

> WHEREAS, under and pursuant to the Indenture, the Issuer has
> assigned to the Trustee, as security for the payment of the
> principal and Purchase Price of and premium, if any, and
> interest on the 2001 Bonds and the fees, expenses and advances
> of the Trustee, and any other sums payable by the Corporation
> pursuant to this Loan Agreement, all of the Issuer's right, title
> and interest in and to the Trust Estate as hereinafter defined,

(continued...)

3

KeyBank National Association (the "Credit Bank").  Debtor and the Indenture Trustee contest Madison's claim that it holds an independent, duly perfected first priority security interest and/or mortgage in certain property of the Debtor. [5]

The construction and development of the Debtor's continuing care retirement facility was primarily financed through the issuance of publicly traded tax exempt bonds in the aggregate face amount of $59,010,000 issued by the Allegheny County Hospital Development Authority (the "Issuer").  The bond financing was evidenced by various documents, including a Loan Agreement, Mortgage and Security Agreement ("Loan Agreement") dated February 15, 2001, between the Issuer and the Debtor.  Exhibit B, Loan Agreement.  The mortgage was recorded on February 28, 2001.  There is also a promissory note dated February 28, 2001, in the original principal amount of $59,010,000 made payable to the Indenture Trustee.  Exhibit C, Note.  In connection with the issuance of the Bonds, a Trust Indenture dated February 15,

---

[4](...continued)
> including this Loan Agreement and all amounts payable by the Corporation hereunder, except certain Reserved Rights, as hereinafter defined  . . .

[5]Debtor and the Indenture Trustee had asserted that Madison has no independent right to credit bid at a sale of the Debtor's assets and was not entitled to relief from stay to proceed against the Debtor's assets.  With respect to the credit bid, the court determined at a hearing on June 19, 2009, that Madison could credit bid up to the amount of its secured claim if it met the financial qualifications of the bid procedures.  Counsel for Debtor then acknowledged that the Indenture Trustee and Madison could credit bid to the level of the security interests they hold.   Madison filed two motions for relief from stay, one of which remains pending in part and concerns Madison's entitlement to Entrance Fee Funds and Accumulated Cash Surplus. *See* Bankr. Doc. No. 235.  On July 28, 2009, an order was entered granting the motion in part and ordering release of Entrance Fee Funds for immediate disbursement to Madison and the Bondholders by the Indenture Trustee in accordance with the loan documents.  The order further provided that a certain amount of the Entrance Fee Funds was to be withheld until certain claims are resolved.  The hearing with respect to the balance of Debtor's cash was continued to September 3, 2009.

4

2001, was entered into between the Issuer and National City Bank of Pennsylvania, the Original Trustee.  Exhibit A, Indenture.  As part of the bond financing, the Debtor applied to Credit Bank for the issuance of two letters of credit[6] which would be used as security for a portion of the Bonds.  Accordingly, also on February 15, 2001, Debtor and the Credit Bank entered into a Reimbursement Agreement under which the Credit Bank (now Madison) agreed to issue the Letters of Credit.  Exhibit D, Reimbursement Agreement.

To secure its obligations, Debtor granted the Issuer and Original Trustee a first mortgage lien against its real property and a security interest against all of the Debtor's personal property relating to the facility including, but not limited to, certain cash collateral. Exhibit B, Loan Agreement, at Sections 4.03, 4.09.[7]  Thereafter, Credit Bank and Madison entered into a Participation Agreement dated September 15, 2006, (amended in October of 2007) pursuant to which Madison purchased certain rights under the Reimbursement Agreement.  By an Assignment of Reimbursement Agreement dated April 16, 2008, the rights of the Credit Bank under the Reimbursement Agreement were assigned to Madison.  Exhibit E, Assignment of Reimbursement Agreement.  Thus, Madison is the successor to Credit Bank's interests in the Reimbursement Agreement.  The Reimbursement Agreement itself provides at Section 4.2 as part of the Closing Conditions that "the Loan Agreement . . . and UCC financing statements shall have been duly filed in favor of the Trustee."  Exhibit D at 18.

Madison also is the successor to Credit Bank's interest in the Intercreditor Agreement

---

[6]One letter of credit was in the amount of approximately $14.5 million and the other approximately $1.03 million.

[7]The mortgage was recorded on February 28, 2001.

between the Original Trustee and Credit Bank.  Based on the Participation Agreement and

Assignment of Reimbursement Agreement, Madison asserts that it succeeded to all rights and

benefits of the Credit Bank under the Reimbursement and Intercreditor Agreements.  Through

these documents Madison contends it has an independent perfected first priority security

interest in the prepetition bond collateral and an independent right to assert that interest,

including the right to credit bid at any sale of the facility, based on certain language in the

Intercreditor Agreement.  The Intercreditor Agreement, however, is between the Credit Bank

and the Original Trustee.  The Intercreditor Agreement provides:

> WHEREAS, the [Credit] Bank and the Trustee desire to enter
> into this Intercreditor Agreement to set forth certain of their
> respective rights and obligations with respect to property subject
> to the lien and security interests granted by the indenture and the
> Loan Agreement  . . . .

Exhibit G, Intercreditor Agreement, at 2.  Although Debtor acknowledged in writing the terms

of the Intercreditor Agreement, the Debtor is not a party to that agreement.

*Analysis*

As the entity asserting a perfected security interest, Madison has the burden of proof to

a preponderance.  *See, e.g., Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635,

642 (3d Cir. 1991).  Madison also has the burden of proof to a preponderance of the validity,

priority and extent of its asserted lien.  *See In re Fassinger*, 246 B.R. 513, 520

(Bankr.W.D.Pa. 2000)(in a proceeding to determine secured status under §506 and with

respect to dragnet clauses in security agreements, the court stated that "the ultimate burden of

persuasion is upon the creditor to demonstrate by a preponderance of the evidence both the

extent of its lien and the value of the collateral securing its claim," provided that the debtor

6

first satisfies an "initial burden of proof to overcome the presumed validity and amount of the creditor's secured claim").   The documents satisfy Debtor's burden.  However, Madison has not met its burden.

There is no document that grants a security interest to Madison or its predecessor in interest.  The only security interest granted is in favor of the Indenture Trustee.  A review of relevant provisions in the various loan documents establishes the security interest of the Indenture Trustee, not Madison.

We begin with provisions of the Loan Agreement.   The Loan Agreement provides:

> To further secure the prompt payment of the note and the Bank [Madison] Obligations and the performance of its other obligations to the Issuer and the Trustee hereunder and to the Bank under the Reimbursement Agreement, the Corporation [Debtor] does hereby:
>
> (a) Grant, convey, bargain,  sell, release, assign, transfer, set over, confirm and mortgage to the Issuer and the Trustee, as their interests may appear, for the benefit of the Bondholders and the Bank, the Mortgaged property; and
>
> (b) Grant to and create in the Issuer and the Trustee, as their interests may appear for the benefit of the Bondholders and the Bank, a security interest in the mortgaged Property and in the Gross Revenues and all right, title and interest of the Corporation in and to the Funds and accounts established under the indenture.

Exhibit B, Loan Agreement, at Section 4.03.  (Emphasis added.)

The fact that the conveyance under the Loan Agreement is for the benefit of Madison (as successor to the Credit Bank) and the Bondholders does not create a lien in favor of those entities, much less a perfected security interest.  The Loan Agreement clearly states that it grants the security interest "to . . . the Issuer and the Trustee . . . for the benefit of"

Bondholders and the Bank/Madison. Exhibit B, Loan Agreement, Section 4.03. Pursuant to the Trust Indenture, the Issuer assigned to the Trustee all of its right, title and interest to the "Trust Estate."[8]  *See* Exhibit A, Trust Indenture, at 1.  *See also* Exhibit B, Loan Agreement, at 1, 18 and 26 (Section 4.12). The Debtor specifically named the Trustee as the entity to which the mortgage and security interest were conveyed. Credit Bank/Madison is not mentioned.[9] The doctrine of *inclusio unius est exclusio alterius* - the inclusion of one is the exclusion of another - clearly applies. *See Cornerstone Land Development Co. of Pittsburgh LLC v. Wadwell Group*, 959 A.2d 1264, 1270 (Pa.Super. 2008). Although Madison benefitted from the Trustee's mortgage and security interest, it did not itself receive them.

We agree with Madison that, at a minimum, to create a security interest there must be a writing signed by the debtor which contains a description of the collateral. *Matter of Bollinger Corporation*, 614 F.2d 924 (3d Cir. 1980). Citing cases and the Uniform Commercial Code, Madison argues that there is no need for a document to be titled as a security agreement to create a security interest and that no formal grant of such an interest is necessary if certain documentation exists. Madison cites 13 Pa.Cons.Stat.Ann. §§9102,[10]

---

[8]"Trust Estate" is defined in the Loan Agreement and Indenture as "the interests granted by the Issuer to the Trustee pursuant to the Granting Clauses of the Indenture and the Letters of Credit delivered to the Trustee by the Bank." Exhibit B, Loan Agreement, at 18, Exhibit A, Indenture, at 21.

[9]The Indenture Agreement specifically identifies Credit Bank/Madison as a bondholder, as discussed *infra*. *See* Exhibit A at Sections 9.02, 14.15.

[10]This section defines security agreement as "[a]n agreement which creates or provides for a security interest."

9203(b)[11] and *Matter of Bollinger Corporation*, 614 F.2d 924 (3d Cir. 1980). We do not

disagree with Madison's contention that a security interest is created by agreement or that, in

unusual circumstances, the existence of the agreement can be established through documents

and a course of dealing other than a signed security agreement. That is what *Bollinger*

teaches. However, *Bollinger* is not applicable to the pending matter. Here, Debtor actually

---

[11]This section is entitled "Enforceability" and provides that

> Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if all of the following apply:
>
> (1) Value has been given.
> (2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party.
> (3) One of the following conditions is met:
>
> (i) The debtor has authenticated a security agreement which provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned.
>
> (ii) The collateral is not a certificated security and is in the possession of the secured party under section 9313 (relating to when possession by or delivery to secured party perfects security interest without filing) pursuant to the debtor's security agreement.
>
> (iii) The collateral is a certificated security in registered form, and the security certificate has been delivered to the secured party under section 8301 (relating to delivery) pursuant to the debtor's security agreement.
>
> (iv) The collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights or electronic documents, and the secured party has control under section 7106 (relating to control of electronic document of title), 9104 (relating to control of deposit account), 9105 (relating to control of electronic chattel paper), 9106 (relating to control of investment property) or 9107 (relating to control of letter-of-credit right) pursuant to the debtor's security agreement.

9

signed a security agreement and specified therein that it was conveying a security interest only to the Original Trustee and Issuer (now Indenture Trustee).  That fact removes this scenario from *Bollinger* where the debtor failed to sign a security agreement but signed a financing statement and behaved, at all times, in accordance with an intent to convey an interest to the secured party.  In *Bollinger* no one alleged a competing security interest.  Here, all the documents signed by the Debtor indicate an intention to convey a security interest only to the Indenture Trustee which is a properly perfected secured party asserting its right, title and interest.

*Arguendo*, even if Madison could meet its burden to establish that it had a security interest, it has not shown that its interest is perfected.  Madison contends that its security interest was perfected by the filing of the financing statement but the financing statement names the Indenture Trustee, not Madison, as the secured party.[12]  Madison argues that the

---

[12]Other provisions of the Loan Documents further evidence that the Indenture Trustee is the sole holder of the security interest and mortgage:

> • Section 9.12 of the Loan Agreement, at Exhibit B, states that "the secured party is Allegheny County Hospital Development Authority [i.e., the Issuer] and the secured party's assignee is National City Bank of Pennsylvania [i.e., the Original Trustee] as Trustee.

> • Section 9.02(b) of the Trust Indenture, at Exhibit A, providing that "[t]he Corporation has granted the Mortgage to the Issuer and the Trustee for the benefit of the Bondholders and the Bank, and the Trustee shall exercise remedies under the [Loan Agreement] in accordance with this Article IX."

> • Section 9.05 of the Indenture provides in pertinent part:

>> Subject to the limitations on Restricted Remedies . . . if

(continued...)

10

Indenture Trustee is its agent and there is no requirement that a formal agency relationship be

established for a financing statement to be effective.  On this theory, Madison contends that

the Indenture Trustee's filing also perfected Madison's alleged lien.  Madison has not

established any such agency relationship.  No agency agreement exists.  The documents of

record provide that the Indenture Trustee acts <u>for the benefit of</u> Madison and the Bondholders.

Acting for an entity's benefit does not render the actor the beneficiary's agent for all purposes.

Furthermore, if Madison is correct, by logical extension the Indenture Trustee would be the

agent of each of the individual bondholders and each individual bondholder would have

perfected security interests through the filed financing statement.  Clearly, creation of separate

---

[12](...continued)
> any Event of Default has occurred and is continuing, the
> Trustee in its discretion may, and upon the written request of a
> Majority of Bondholders and receipt of indemnity to its
> satisfaction, shall, proceed to protect and enforce its rights and
> the rights of Bondholders ... as the Trustee ... shall deem most
> effectual ... and without limitation ... may, in its own name  ...
>
> (E).  Foreclose the lien of the Loan Agreement by action
> of mortgage foreclosure and public auction for the benefit of the
> Bondholders and the Bank. ...

> • Section 14.09 of the Trust Indenture identifies the secured
> party only as National City Bank.

Section 6.8 of the Reimbursement agreement permits enumerated encumbrances, which
include the mortgage and security interests given to the Trustee.

> • Section 6.8(g) of the Reimbursement Agreement prohibits
> creation of liens except those "securing Parity Indebtedness
> under the Indenture."  *Id*.  Section 3.02 of the Indenture, Exhibit
> A, provides that "[t]he Issuer may issue Additional Bonds
> hereunder from time to time on a parity with the Bonds for any
> of" certain purposes.

11

liens in favor of each bondholder was never contemplated and did not occur via the

documentation.

*The Loan Agreement*

An examination of the Loan Agreement, Exhibit B, illustrates the point.  The Loan

Agreement, dated February 15, 2001, is between Allegheny County Hospital Development

Authority as Issuer, and National City Bank of Pennsylvania as Trustee.  As noted, U.S. Bank

is now the Trustee and has succeeded to the rights of the Original Trustee.  The Loan

Agreement is the document that creates the security interest.  Article IV of the Loan

Agreement is captioned "Mortgage and Security Interest" and provides in Section 4.03:

> **Mortgage and Security Interest.**   To further secure the prompt
> payment of the Note and the Bank Obligations and the
> performance of its other obligations to the Issuer and the Trustee
> hereunder and to the Bank under the Reimbursement
> Agreement, the Corporation [i.e., Debtor] does hereby:
>
> (a) Grant, convey, ... <u>to the Issuer and the Trustee</u> as
> their interests may appear, for the benefit of the Bondholders
> and the Bank, the Mortgaged Property; and
>
> (b) Grant to and create <u>in the Issuer and the Trustee</u>, as
> their interests may appear for the benefit of the Bondholders and
> the Bank, a security interest in the Mortgaged Property and in
> the Gross Revenues . . . .

Exhibit B.  It is clear that the security interest is granted only to the Issuer and Trustee.

Section 4.04 of the Loan Agreement is an assignment provision and states that Debtor

> irrevocably, absolutely, presently and unconditionally assigns <u>to
> the Issuer</u>, as its interests may appear, for the benefit of the
> Bondholders and the Bank, all rents, royalties, issues, profits . . .
> including all prepaid rents and security deposits . . . .  This is an
> absolute assignment, not assignment for security only.

Exhibit B, Loan Agreement.  This conveyance is clearly only to the Issuer.  Pursuant to the

12

Trust Indenture, the Issuer assigned its right, title and interest to the Trustee.  Exhibit A at 1.

Section 6.11 of the Loan Agreement, captioned "Financing Statements and Other

Action to Protect Security Interests," provides that Debtor

> shall cause the Loan Agreement and the Indenture or a financing
> statement  . . . . to be recorded . . .. to protect the security of the
> Registered Owners of the Bonds and the right, title and interest
> of the Trustee in and to the Trust Estate . . . .

The "right, title and interest" is clearly defined as that of the Trustee.

Article VIII of the Loan Agreement addresses events of default and remedies under the

Loan Agreement.  Under Section 8.01(h), if an "Event of Default" occurs under the Indenture

or the Reimbursement Agreement,[13]

> the Issuer or the Trustee may . . . in addition to its other
> remedies at law or equity or provided for in the Indenture or this
> Loan Agreement, by notice to the Corporation specifying the
> Event of Default, (i) . . . enter upon, take and maintain actual
> possession of the Mortgaged Property, or any part thereof, . . .
> and may, as attorney-in-fact or agent of the Corporation or in its
> own name, hold, manage and operate the Mortgaged Property
> and collect the amounts which shall be or become payable by
> reason of such operation, or (ii) take any or all lawful action . . .

---

[13]The Reimbursement Agreement, Exhibit D to the Complaint, is dated February 15,
2001, and is between Debtor and KeyBank (now Madison).  It provides, *inter alia*, that its
purpose is to set forth the Bank's/Madison's commitment to issue the Letters of Credit in
favor of the Trustee and Debtor's agreement to reimburse the Bank for payments made by the
Bank pursuant to the letters of credit.  The purpose of obtaining the letters of credit was to
enhance the marketability of the Bonds.  Nothing in the Reimbursement Agreement grants a
lien to Madison.  Section 3.5 of the Reimbursement Agreement (Representations and
Warranties) provides that the Borrower, Debtor, has good fee simple title to the Premises
except for "Permitted Encumbrances."  "Permitted encumbrances" are defined as liens and
encumbrances permitted by Section 6.8 of the Reimbursement Agreement.  Section 6.8
includes the lien granted to the Trustee to secure Debtor's obligations under the Loan
Agreement.  Exhibit D at Section 6.8(j).  Thus, even the Reimbursement Agreement which is
one of the documents under which Madison asserts a lien, does not create a separate security
interest conveyed to Madison.

> to foreclose the Mortgage upon the Mortgaged Property or the
> Security Interest granted hereunder, or (iii) take any or all other
> lawful action to enforce the rights of the Issuer or the Trustee
> hereunder. . . .

The Bank is not mentioned.

Section 8.02 of the Loan Agreement  provides that, upon an Event of Default under

Section 8.01, "the Issuer and the Trustee (as the Issuer's assignee) shall have the right to all

remedies available at law or equity, including" those stated in Section 8.04.  Under Section

8.04

> (a)      All rights and remedies herein given or granted to the
> Issuer and the Trustee are cumulative, nonexclusive and in
> addition to any and all rights and remedies that the Issuer and
> the Trustee may have or be given by reason of any law, statute,
> ordinance or otherwise.

> (b)      With respect to any amounts payable by the Corporation
> to the Issuer or Trustee hereunder, the Issuer and Trustee shall
> have, in addition to any other rights and remedies, the same
> rights and remedies as are provided by law and in this Loan
> Agreement in the case of default by the Corporation in the
> payment of amounts due.

Exhibit B at Sections 8.01, 8.02 and 8.04.  The Bank is not mentioned.

Section 4.09 of the Loan Agreement reinforces the conclusion that the Trustee is the

only secured party:

> The parties intend for this Loan Agreement to create a lien on
> the Mortgaged Property, and an absolute assignment of the
> Rents, all in favor of the Issuer [now the Indenture Trustee], for
> the benefit of the Bondholders and the Bank ....

Loan Agreement, Exhibit B, at Section 4.09.  There is no provision whatsoever under the

Loan Agreement for the creation of a lien or remedies in favor of Madison in the event of

default.  The Loan Agreement is solely between the Issuer/Indenture Trustee and Debtor.

14

*The Trust Indenture*

The Trust Indenture, also dated and executed on the same day as the Loan Agreement, February 15, 2001, Exhibit A, constitutes a conveyance of a security interest by the Issuer to the Trustee.  Exhibit A, at 1.  For example the Indenture states, in part, that, in order to

> . . . secure all Bonds . . . , the payment of the principal or redemption price . . . and interest thereon, the rights of the Bondholders and the performance of the covenants contained in the Bonds and herein, . . . the Issuer and the Trustee have executed and delivered this Indenture and . . . the issuer does hereby without recourse bargain, sell, convey, mortgage, assign, transfer, set over and pledge and grant a security interest unto the Trustee, its successors in the trust and its assigns forever, . . . all of the right, title and interest of the Issuer in and to . . . the Note . . . .  The Loan Agreement . . . .  The Issuer's interest in the Mortgage on the Mortgaged Property and the security interest in the Gross Revenues, granted to the Issuer pursuant to the Loan Agreement. . . . The net proceeds from the sale of the Bonds . . . .  Any and all other real or personal property of every kind . . . .  **IN TRUST, NONETHELESS,** for the equal and ratable benefit and security of all present and future holders of the Bonds issued and secured under the Indenture . . . .

Exhibit A, at 1-2 (emphasis in original).  The Indenture requires Debtor to "cause this Indenture or a financing statement" to be filed "to protect the security of the Registered Owners of the Bonds and the right, title and interest of the Trustee."  A UCC-1 naming the Trustee was filed in lieu  of the Indenture.  Article IX of the Indenture deems the Bank/Madison to be the Registered Owner of the bonds,[14] gives Madison the rights enumerated in Article IX, and permits it to take actions permitted of Bondholders with respect to the bonds but only as long as the letter of credit is in effect and the Bank/Madison is not in

---

[14]Section 9.02 states that this is "except for purposes of notices to Bondholders."

default.[15]  The relevant provision in this dispute is Section 9.03 which provides in part that, if the principal of the Bonds has been declared to be due and payable, the <u>Trustee</u> may take certain actions which will bind the Issuer, the Trustee, the Bank/Madison and the Registered Owners of the Bonds.  Further, if an Event of Default occurs and continues, it is the <u>Trustee</u> who is permitted to enforce those rights granted to the Issuer under the Bond Documents and to the Bank/Madison under the Loan Documents.  The Loan Documents are comprised of the Note, executed by Debtor in favor of the Issuer, the Loan Agreement between the Issuer and Debtor, and the Reimbursement Agreement between Debtor and the Credit Bank.  *Id*. at Section 9.04.

Another indication of the priority position of the Trustee is in Section 9.05 of the Trust Indenture which provides that the Trustee has the discretion, upon the written request of a majority of  Bondholders and receipt of indemnity to the Trustee's satisfaction, to take action to enforce its and the Bondholders' rights.  Furthermore, the Trust Indenture provides that "[n]o Registered Owner shall have any right to pursue any remedy" under the Indenture unless the Trustee has been given written notice of an Event of Default, the Registered Owners of at least 25 percent of the Bond and Bank Obligations have submitted a written request to the Trustee to take action, the Trustee has been offered indemnity satisfactory to it, and fails to comply within a reasonable time.

*The Reimbursement Agreement*

As further evidence of the fact that Madison had no separate lien, Section 9.10 of the

---

[15]If the Bank/Madison is in default it has only the rights of an owner with respect to Pledged Bonds it owns.  Exhibit A, Section 9.02.

16

Reimbursement Agreement states that the "Credit Documents and the Letter of Credit embody the entire agreement and understanding between" Debtor and the Bank.  Section 9.17 provides for entry of a confessed judgment on the Note, not a mortgage foreclosure, and then only after maturity.  Section 6.8(j) of the Reimbursement Agreement prohibits creation of liens except "any lien or encumbrance granted to the Trustee to secure the Borrower's obligations under the Loan Agreement."  Exhibit D.  The Credit Bank to which Madison is a successor agreed, as did the Bondholders, to take merely a beneficial interest in the Indenture Trustee's mortgage and security interest.  The documents they signed clearly establish that Credit Bank recognized that no other liens could be placed on the collateral unless those liens secured Debtor's obligation to the Trustee.

*The Intercreditor Agreement*

Madison's reliance on the Intercreditor Agreement, Exhibit G, to support its assertion that it shares a perfected first lien position with the Trustee is misplaced.  The Intercreditor Agreement is dated February 1, 2001, although signed on February 28, 2001, and expressly recognizes that the security interest and the mortgage lien granted by the Debtor were granted to the Trustee.[16]   The Intercreditor Agreement is just that - it is a contract between two

---

[16]The seventh "whereas" clause in the Intercreditor Agreement states:

> WHEREAS, to secure . . . the payment and performance of its obligations under the Loan Agreement and the Reimbursement Agreement, the [Debtor] has, pursuant to the Loan Agreement, granted <u>to the Trustee</u> for the benefit of the Bondholders and the Bank a first mortgage lien on and security interest in the Project and a security interest in its Gross Revenues"

(continued...)

creditors, KeyBank, which Madison replaced, and National City, which U.S. Bank replaced

with respect to the arrangement between themselves.  Debtor signed the document agreeing to

be bound by its terms but that document imposes no other duties or obligations on Debtor and

conveyed nothing from the Debtor to any party.  There is nothing in the documents that give

Madison a security interest or lien with respect to Debtor's property.

The Intercreditor Agreement provides that "the Bank and the Trustee shall both have a

first lien on and security interest in the Shared Collateral, it being the intent of the parties that

the Bank and the Trustee shall be equally and ratably secured by the Shared Collateral, in

proportion to their respective Interests. . . ."  Exhibit G, Intercreditor Agreement at 4, Section

2(a).  This is an arrangement between the Bank and the Trustee, not between the Debtor and

anyone.[17]  We agree with Madison that 13 Pa.Cons.Stat.Ann. §9102 defines "security

agreement" as one that "creates or provides for a security interest."  The Intercreditor

_____

[16](...continued)
Exhibit G at 2 (emphasis added).  Thus, even the document relied on by Madison recognizes
the conveyance of the first position security interest to the Trustee.  The next "whereas"
clause provides that "to further secure  its obligations under the Reimbursement Agreement,
the Loan Agreement and the Note, the [Debtor] has executed and delivered to the Trustee and
the Bank the Assignments" but "Assignments" is defined to include "the architect's contract,
construction contract, development agreements, management agreement and license
agreement . . . from the [Debtor] to the Bank and the Trustee. . . ."  *Id.*  There is no grant of a
security interest under this provision.

[17]The Intercreditor Agreement does not define "party" but the ninth "Whereas" clause,
found on page two of that agreement, states that "the Bank and the Trustee desire . . ."
Thereafter, the agreement specifies the relationship of the creditors among themselves.
Nowhere does the Debtor convey anything to anyone in the Intercreditor Agreement.  The
Debtor is identified in the initial paragraph as "acknowledg[ing]" the agreement between the
Trustee and the Bank, and nothing more.  Further, the Debtor signed, NOT as a party - only
the Trustee and Bank signed as parties - but only with this statement:  "By its execution
hereof, [Debtor] hereby acknowledges receipt of a copy of the foregoing Intercreditor
Agreement and agrees to be bound by the terms thereof."  Exhibit G, Intercreditor Agreement.

Agreement does not create or provide for a security interest by the Debtor to anyone.

The Intercreditor Agreement states that "the Bank and the Trustee desire to enter into" the agreement "to set forth certain of their respective rights and obligations . . . <u>subject to</u> the lien and security interests granted by the Indenture and the Loan Agreement." Exhibit G, Intercreditor Agreement, at 2. The Intercreditor Agreement expressly recognizes that the rights and obligations set forth are "subject to" the lien and security interests granted by the Indenture and the Loan Agreement to the Trustee.

The Intercreditor Agreement provides for certain "Restricted Remedies" to the Trustee and to Madison. As to the Trustee, the Restricted Remedies concern the "Bond Documents."[18] Madison's Restricted Remedies concern only the Bank Documents.[19] The Intercreditor Agreement required Trustee and Madison to notify each other if either was going to commence an action under the Bond or Bank documents, respectively. In that case, each would have a period of time to either join the other's action or commence its own action. *See* Exhibit G, Intercreditor Agreement, at Sections 3, 4. Thus, although under the Intercreditor Agreement Madison and the Trustee have separate contractual remedies that they may pursue in certain circumstances, nothing therein (or elsewhere) has established that Madison has an independent interest that is perfected.

The Intercreditor Agreement, if interpreted as Madison suggests, would be an additional lien that would violate the Loan Agreement. Such a construction simply makes no

---

[18]The Bond Documents are defined on page 2 of the Intercreditor Agreement as the Indenture, the Loan Agreement and assignments of certain agreements.

[19]/The Bank Documents are defined in the Intercreditor agreement as the Reimbursement Agreement and the assignments.

sense where the Loan Documents are clear that Debtor intended to, and did, convey a security

interest only to the Trustee and the Issuer (whose interest now belongs to the Indenture

Trustee) and not to the Bank.  The mortgage was recorded and the UCC-1 was filed with

respect to the Trustee and never with respect to Madison.[20]

       While its beneficial interest may provide Madison certain entitlements, including

certain contractual rights under the Intercreditor Agreement, it does not entitle Madison to

directly assert the rights of a secured party against the Debtor in the circumstances now

pending in this Court.  Further, the contractual rights under the Intercreditor Agreement do not

designate the Indenture Trustee or any other entity as an agent for Madison and no other

document or evidence has been presented to establish an agency relationship.

---

[20] Madison cites a Georgia Bankruptcy Court case, *In re Amron Technologies, Inc.*,
2007 WL 917236 (Bankr.M.D.Ga., March 22, 2007), concerning multi-lender transactions for
the proposition that a financing statement can perfect the security interests of several parties.
That case, however, held that the failure to name all the lenders meant that only the lender
named on the financing statement was perfected.  The court noted that some multi-lender
transactions are structured so that only one lender need file the financing statement but in
those cases there are contractual agreements  among the lenders whereby one is designated as
the agent for the others.  In that circumstance the agent has authority to sign the financing
statement in a representative capacity for all the lenders.  The court said,

       some multi-lender transactions are structured in such a way that
       only one lender need file a financing statement.  For example,
       with syndication loans, multiple lenders loan money to the
       borrower, and each lender has a contractual arrangement with
       the borrower.  By contractual agreement among the lenders, one
       lender is designated agent for all the lenders.  The agent then
       has authority to sign the financing statement in a representative
       capacity for all the lenders.

2007 Wl 917236 at  *3.  That situation does not exist in this case.  There is nothing in the
documents that creates an agency relationship between Madison and the Indenture Trustee.
The Intercreditor Agreement constitutes an arrangement between Madison and the Trustee
with respect to how each entity's interests are addressed as between themselves.

*Madison's Default Judgment*

Madison also asserts that it has an independent perfected lien by virtue of a default

judgment it obtained against the Debtor and that the Intercreditor Agreement gave it

independent rights.  Although Madison obtained a foreclosure judgment in state court, as did

the Trustee, pursuant to the Intercreditor Agreement it at most shares its judgment with the

Trustee and shares in the Trustee's judgment.  Otherwise, it has a mere judgment lien that is

junior in position to the first perfected secured position of the Indenture Trustee.[21]

*Conclusion*

Madison has no separate first priority lien independent of the Trustee's and is entitled

only to assert its beneficial interest.

An appropriate order will be entered.

DATE:  September 3, 2009

*Judith K. Fitzgerald*

**rmab**

Judith K. Fitzgerald
United States Bankruptcy Judge

---

[21]As noted, *supra*, in text, it has been determined that Madison may credit bid at a sale
of the real property up to the amount of its claim, if it meets the financial conditions to
qualify, despite its lack of a separate lien.  Thus, whether or not it has a separate lien is
irrelevant to the sale.

21

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| The Covenant at South Hills, Inc.<br>          Debtor(s) | Bankruptcy No. 09-20121<br>Chapter 11 |
| Madison Investment Trust<br>          Plaintiff(s) | |
| v. | Adversary No. 09-2209 |
| The Covenant at South Hills, Inc.<br>          Defendant(s) | |

## ORDER

**AND NOW**, this **3rd** day of **September**, **2009** , for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that Madison Investment Trust has no separately perfected security interest or lien in Debtor's collateral.

It is **FURTHER ORDERED** that Madison Investment Trust shall immediately serve a copy of this Memorandum Opinion and Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

_Judith K. Fitzgerald_
Judith K. Fitzgerald                    **rmab**
United States Bankruptcy Judge

1